COMMERCIAL NATIONAL BANK OF CHICAGO, Plaintiff-Appellee, v. MAHENDRA R. MEHTA *et al.*, Defendants-Appellants.

First District (4th Division)   No. 85—1747

Opinion filed June 5, 1986.

Mahendra R. Mehta, of Chicago, for appellants, *pro se.*

Peterson, Ross, Schloerb & Seidel, of Chicago (Lawrence X. Pusateri and Rocco J. Spagna, of counsel), for appellee.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Defendants appeal from an order of the circuit court of Cook County denying their motion to vacate a previous order granting plaintiff relief pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401). In this appeal, defendants contend that the trial court erred when it suggested to plaintiff that it amend its petition to vacate so that it would be brought pursuant to section 2—1401 of the Code of Civil Procedure; that plaintiff's section 2—1401 petition was deficient in law; that the trial court's exercise of equitable powers pursuant to section 2—1401 defeats the provisions of other laws and makes the same redundant; and that in allowing plaintiff's section 2—1401 petition the trial court failed to consider the resultant prejudice to defendants.

The underlying action in this matter was plaintiff's complaint to foreclose a trust deed on several parcels of real estate given to plaintiff as security for the payment of a note made by defendants to plaintiff. Allegedly, plaintiff had received no payments on the note since 1978. On March 25, 1983, the trial court entered summary judgment in plaintiff's favor.

BACKGROUND

In 1976 plaintiff agreed to provide financing for defendants' acquisition of a grocery store, which was located in Norridge. Because

of this, plaintiff made a loan of $100,000 to Three Stars, Inc., a proposed Illinois corporation. Defendants, in their capacity as officers of the proposed corporation, signed a demand note that granted plaintiff the right to resort to certain specified collateral for payment of the loan in case of default.

That loan was secured by a Uniform Commercial Code (UCC) security agreement, which covered the furniture, fixtures, chattels, and accounts receivable connected with the store. It was also secured by a trust deed covering the three parcels of real estate owned by defendants individually. The trust deed designated defendants as grantors and provided that the grantors agreed to pay the indebtedness evidenced by the note, preserve the real estate that was collateral for the loan, and satisfy all costs if foreclosure by plaintiff became necessary. In addition, defendants, individually, signed a personal guarantee agreement specifying that their liability would not be affected by any change in the indebtedness, security, or collateral and that the plaintiff had express authorization to make such changes without notice. In addition, defendants, individually, signed an owner's consent by which plaintiff, without notice to defendants, could resort to the collateral real estate for payment of the indebtedness evidenced by the note.

In 1977 plaintiff made a second loan to defendants' corporation, which at that time was called Dobson, Inc., because of the unavailability of the name Three Stars, Inc. This $35,000 loan was also evidenced by a demand note containing terms identical to those in the original note and bearing the signatures of defendants as officers of the corporation. Defendants also signed, individually, a limited guarantee containing essentially the same terms as those in the personal guarantee that had accompanied the original loan.

In 1978 defendants renewed the aforesaid loans under the terms of a demand note that was signed by defendants both individually and as officers of Dobson, Inc. The renewed loan in the amount of $84,000 stated that it was secured by the same security agreement and trust deed that had secured the original notes, and the new note contained language identical to that in the two prior notes. Moreover, in exchange for paying a 2% higher interest rate, defendants were given an extra three years to make the payments and were required to make monthly payments in an amount nearly equal to half of what they had been paying on the two original notes. The notes evidencing the two original loans were then stamped by plaintiff "paid by renewal."

On August 9, 1978, Dobson, Inc., was forcibly evicted from the

supermarket. Plaintiff then filed a notice of enforcement of security interest under sections 9—504 and 9—505 of the UCC (Ill. Rev. Stat. 1983, ch. 26, pars. 9—504, 9—505), and began to make arrangements for a UCC sale of the property covered by the security agreement. In response, defendants obtained an injunction enjoining the sale, arguing that plaintiff would not be damaged by the injunction and did not need to enforce the security agreement because the bank had adequate security for its loan under the trust deed. Defendants asserted that without the furniture, fixtures inventory, and accounts they would be prevented from operating the store, and consequently, could not make payments on the loans. However, on March 20, 1979, plaintiff instituted foreclosure proceedings because no payments due under the renewed note had been made on or after November 15, 1978, by defendants.

On November 3, 1981, plaintiff filed an amended complaint to foreclose a mortgage on two of the parcels of real estate named in the trust deed. Defendants filed an answer, an affirmative defense and a counterclaim for damages allegedly attributable to plaintiff's alleged impairment of the collateral. Two days later, defendants sued plaintiff (No. 82 L 700), making allegations identical to those in their counterclaim to plaintiff's amended foreclosure complaint (No. 79 CH 1629). On August 24, 1982, the two cases were consolidated.

When plaintiff filed a motion for summary judgment in its foreclosure action, defendants requested an indefinite extension of the briefing schedule to enable them to conduct unspecified documentary discovery and take the depositions of four persons who had participated in the eviction from the store or in plans to conduct the UCC sale. On February 14, 1983, the trial court entered an order that, *inter alia,* denied the motion for an extension and stayed discovery pending its ruling on plaintiff's motion for summary judgment. Defendants then argued that they had a due process right to conduct discovery before the trial court considered plaintiff's summary judgment motion, and they filed a motion to vacate the order staying discovery and to continue the hearing on plaintiff's motion. The trial court heard arguments on both motions on March 25, 1983, but deferred entry of an order pending the submission of proposed drafts by the parties. Despite the lack of a final order, defendants filed a notice of appeal "against the order of 3-25-83" denying their motions to vacate the stay order and to continue the hearing. On March 28, 1983, the trial court entered an order *nunc pro tunc* to March 25, denying defendants' motions, granting plaintiff's motion for summary judgment, and granting defendants leave to conduct

discovery with respect to their counterclaim in cause No. 79 CH 1629 and complaint in cause No. 82 L 700, both of which dealt with the alleged impairment of the collateral.

On April 4, 1983, following the entry of further interlocutory orders, defendants filed a second notice of appeal, this one from the trial court's denial of their petition for permission to file an appeal from the court's order denying their March 25 motion for an extension of time under Supreme Court Rule 191(b) (87 Ill. 2d R. 191(b)) to obtain affidavits from hostile or otherwise unavailable witnesses. On April 22, 1983, defendants filed a third notice of appeal, claiming error in the trial court's order which denied their motions for a continuance and for the vacation of the stay order and which granted plaintiff's motion for summary judgment.

On September 27, 1984, by a Rule 23 order this court affirmed the trial court's order granting plaintiff summary judgment. (*Commercial National Bank v. Mehta* (1984), 127 Ill. App. 3d 1156.) The Illinois Supreme Court denied defendants' petition for leave to appeal (*Commercial National Bank v. Mehta* (1985), 101 Ill. 2d 588) and issued its mandate to this court. On March 14, 1985, this court issued its mandate to the trial court.

On March 19, 1985, the trial court dismissed the present matter for want of prosecution when neither party appeared at the trial court's chancery calendar call. On April 25, 1985, plaintiff filed a motion to vacate the dismissal. On May 2, 1985, plaintiff filed a section 2—1401 motion to vacate. That motion stated that the instant action was a mortgage foreclosure that involved several lengthy appeals to the appellate court and the supreme court from the court's order granting plaintiff's motion for summary judgment and denying several other of defendants' motions which divested the circuit court of jurisdiction; that the appellate court upheld the trial court's order and the supreme court denied defendants' petition for leave to appeal; that the supreme court issued its mandate to the appellate court on February 26, 1985; that the appellate court issued its mandate to the circuit court on March 14, 1985; that plaintiff was not informed that the appellate court mandate would issue to the court, thereby revesting jurisdiction in the circuit court; that on March 19, 1985, the circuit court dismissed the instant mortgage foreclosure action for want of prosecution; and that plaintiff first obtained knowledge of the dismissal on April 23, 1985, when it checked the court file in preparation for continuing the enforcement of the circuit court's summary judgment order. The motion then requested that the dismissal for want of prosecution be vacated and that the

matter be returned to the court's regular calendar.

A hearing was held on that petition on the same date. After that hearing, the trial court granted plaintiff's section 2—1401 motion to vacate the dismissal for want of prosecution. The case was then reinstated. Subsequently on June 7, 1985, the trial court denied defendants' motion to vacate the May 2, 1985, order. Apparently, defendants did not respond to plaintiff's section 2—1401 motion. Also in their motion to vacate, defendants did not object to the sufficiency of the petition because of lack of notice, affidavits or diligence.

OPINION

In this appeal, defendants contend that the trial court acted improperly when it suggested to plaintiff that it amend its petition so that the motion to vacate would be made pursuant to section 2—1401; that plaintiff's section 2—1401 petition is deficient in law; that the trial court's exercise of equitable powers pursuant to section 2—1401 defeats the provisions of other laws and makes the same redundant; and that the trial court erred when it granted plaintiff's section 2—1401 motion because it did not consider the resulting prejudice to the defendant.

■ A petition pursuant to section 2—1401 invokes the equitable powers of the court to the extent that justice and fairness require. (See *Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 613, 190 N.E.2d 348.) The granting or refusing of section 2—1401 relief must be decided according to the principles of fundamental fairness with the object of preventing injury and seeking the furtherance of justice. (See generally *Mieszkowski v. Norville* (1965), 61 Ill. App. 2d 289, 297-98, 209 N.E.2d 358.) Granting of section 2—1401 relief will be overturned only where the trial court has abused its discretion. See generally *Geller v. General Motors Corp.* (1980), 87 Ill. App. 3d 972, 975, 410 N.E.2d 262.

In *Klehm v. M. Suson & Associates, Inc.* (1974), 22 Ill. App. 3d 1070, 1072, 318 N.E.2d 346, the case was dismissed for want of prosecution after it had been transferred from the law division of the circuit court to the municipal division. Two years and four months later, the plaintiff moved to vacate the dismissal alleging that he had not received notice of the transfer of the case to the municipal division; that the partner in his firm responsible for the case was no longer with the law firm; and that he was unaware of the dismissal until the day prior to the filing of the motion to vacate. After hearing this argument, the trial court granted the mo-

tion and reinstated the case. Subsequently, defendant moved to vacate that order, contending that plaintiff's motion was not argued, did not include affidavits and failed to show due diligence. Defendant also maintained that the order was void as a matter of law since plaintiff's motion to vacate was filed beyond the limitations period for section 2—1401 relief. However, the trial court denied that motion and the defendant appealed.

On appeal, this court noted that the transfer of the case to the municipal division, which led to the dismissal for want of prosecution, was without actual notice to the parties even though the transfer had appeared in the Chicago Daily Law Bulletin. In affirming the trial court's granting of section 2—1401 relief, this court held that the confusion generated by the transfer without actual notice deprived the court of jurisdiction to dismiss the case. *Klehm v. Suson & Associates, Inc.* (1974), 22 Ill. App. 3d 1070, 1075, 318 N.E.2d 346.

■ In the present matter, the trial court granted plaintiff's motion for summary judgment on March 25, 1983, and defendant appealed. This court affirmed the trial court's order and defendant filed a petition for leave to appeal with the supreme court. Subsequently, the supreme court denied defendant's petition and issued its mandate to this court. Apparently, under chancery division procedure, this case was placed on the calendar call for March 19, 1985, well before that date while the matter was still on appeal. However, this court's mandate happened to be issued on March 14, 1985. As is evident, there obviously was some confusion over the trial court's jurisdiction at the time of the dismissal for want of prosecution. There was a weekend between March 14 and March 19. Consequently, we feel that it is unlikely that the trial court was aware that this court had issued its mandate revesting the trial court with jurisdiction. Plaintiff's section 2—1401 motion, which was attested to by plaintiff's attorney, maintained that plaintiff did not obtain knowledge of the dismissal for want of prosecution until April 23, 1985, when that attorney checked the court file in preparation for continuing the enforcement of the trial court's summary judgment order. That allegation was not contradicted by defendants. Because of this, we are of the opinion that while the court technically had jurisdiction on March 19, 1985, the court dismissed the matter for want of prosecution although plaintiff had no actual notice that the appellate court had issued its mandate. Under such circumstances, we feel that the trial court acted properly when it vacated the dismissal and reinstated the case.

■■ ■ A party will prevail on a section 2—1401 petition where the petitioner shows: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting that defense or claim in the original action; (3) but through no fault or negligence of his own an error of fact or a valid defense or claim was not made to appear to the trial court at the time the challenged judgment, order or decree was entered; and (4) due diligence in filing the petition for section 2—1401 relief. (*Geller v. General Motors Corp.* (1980), 87 Ill. App. 3d 972, 975, 410 N.E.2d 262.) In this matter, plaintiff's complaint established the existence of a meritorious claim and that plaintiff exhibited due diligence in presenting that claim in the original action. Plaintiff also demonstrated due diligence in filing its petition for section 2—1401 relief in that the petition was filed 35 days after the dismissal for want of prosecution was entered on March 19, 1985. Accordingly, only the third element, whether plaintiff's inadvertent failure to attend the chancery calendar call was excusable, is at issue. We feel that plaintiff's failure to appear at the chancery calendar call was inadvertent, based on its belief that the trial court had no jurisdiction because the case was on appeal. This inadvertence should not bar relief under section 2—1401. See *Geller v. General Motors Corp.* (1980), 87 Ill. App. 3d 972, 410 N.E.2d 262.

■■ Defendants maintain that the trial court abused its authority in allowing plaintiff to amend its motion to vacate on its face to state that it was being brought pursuant to section 2—1401. However, plaintiff's petition could not be deemed insufficient, even if the trial court did not allow the amendment, since under Illinois law a petition for reinstatement of an action dismissed for want of prosecution after 30 days may be treated as a petition seeking relief under the aforesaid section although not denominated as such. See *De Jarnett v. Roseborough* (1968), 94 Ill. App. 2d 164, 167, 236 N.E.2d 276.

■■ Defendants also assert that the section 2—1401 petition was deficient in that it was not supported by affidavits. However, defendants failed to raise that contention in the trial court and instead argued the merits of the petition. Under such circumstances, we must conclude that defendants have waived any question as to the petition's sufficiency. See *Maierhofer v. Gerhardt & Lake Zurich Hotel* (1961), 29 Ill. App. 2d 45, 48, 172 N.E.2d 201.

■■ Moreover, we must point out that this matter involves the trial court's *ex parte* dismissal for want of prosecution only because the parties failed to answer the calendar call. An affidavit or other appropriate showing was not necessary under such circumstances be-

cause the court had sufficient facts of record to justify its granting of section 2—1401 relief. (See *Strader v. Chrysler Corp.* (1973), 9 Ill. App. 3d 793, 796-97, 293 N.E.2d 149.) The facts concerning the summary judgment order, the appeal status of the case and the date of the appellate court mandate were all matters of record at the time of the trial court's vacatur of the dismissal order. Moreover, the allegations made in the section 2—1401 petition were signed by plaintiff's attorney who would have personally known of such facts. Therefore, this contention is also without merit.

■ Defendants further maintain that since an order dismissing a case for want of prosecution is not final and appealable, plaintiff's only remedy was to refile the action. However, this contention has been specifically rejected by this court. See *Yorke v. Stineway Drug Co.* (1982), 110 Ill. App. 3d 1009, 1012-13, 443 N.E.2d 644.

■ Defendants also contend that the trial court did not consider the resultant prejudice to them by the order vacating the dismissal. However, defendants raised the exact argument in their motion to vacate the order granting plaintiff's request for section 2—1401 relief. In view of this, it is evident that defendants' contention that the trial court failed to consider possible prejudice to them is erroneous.

We must further point out that the summary judgment in granting the foreclosure of a mortgage on two of the parcels of real estate named in the trust deed in question is only a small part of what has transpired during the litigation in this matter. Therefore, we feel that this is an additional reason for the trial court's decision to reinstate the summary judgment in favor of plaintiff.

For the reasons stated above, the order of the circuit court of Cook County, granting plaintiff's request for section 2—1401 relief, is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.